## BRYANT v. PUGH.

1. Where a tenant retained control and direction of the farm, and croppers worked it under his direction and were to receive a part of the crop as wages for their labor, the relation between them and the tenant was not that of landlord and tenant, but of master and servant; and a sale by them to the tenant's landlord of a part of the crop before the master was fully paid for his portion of the crop and for advances he had made to them, passed no title thereto. But where the tenant made an additional and separate contract with one of the croppers, by which it was agreed that the cropper was to pay $60 for a crop which had been begun and abandoned by another, work it and give the tenant half, the remaining half to be bound for the $60, this cropper became a renter of the land occupied by that crop, and the title to the crop raised on it was in him.

2. A refusal to charge which is shown by the evidence to have been no injury to the defendant, is not cause for setting aside the verdict.
January 14, 1891. By two Justices.

Trover. Croppers. Master and servant. Landlord and tenant. Charge of court. Practice. Before Judge MEYERHARDT. City court of Floyd county. June term, 1890.

Pugh sued Bryant in trover for 4,381 pounds of seed-cotton and 31 bushels of corn, worth $150. The evidence for the plaintiff tended to show the following: He rented a farm from defendant during 1889, and was to pay defendant one third of the corn, one fourth of the cotton and all the cotton-seed grown on the place. A part of this farm was worked by Caruth and a part by Graves. Plaintiff's contract with them was, that he would furnish the land and stock and tools, they were to work under his direction, and he was to have half the crop and they the other half. The crop was to be his until he was paid his part and all the supplies he might furnish them. He did not agree to furnish any given amount of supplies, nor all the supplies necessary to make a crop. He did agree to furnish the guano, and did so, and also furnished them some sup-

plies. They had arrangements with Bryant to get supplies, which plaintiff knew before he traded with them. He knew that Bryant took a mortgage after they traded. Bryant knew that plaintiff had furnished supplies. The property sued for was a part of the crop made by Caruth and Graves, which was delivered by them to Bryant's gin, where Bryant took control of it without plaintiff's consent and said he was going to sell it and put it in his pocket. The corn was a part of Caruth's crop which had been gathered, and plaintiff's half was paid to plaintiff, and twenty-five bushels of Caruth's part was levied on. The balance of Caruth's part was turned over to Bryant without plaintiff's consent, and this is what plaintiff has sued for. He made two contracts with Caruth : the first was for a crop for himself ; the other was to work the crop begun by a man named Connell ; the terms of the trade were the same for both crops, except that Caruth was to pay plaintiff $60 for what supplies Connell had already got. A part of the cotton sued for was made by Caruth on his first crop, and a part on the Connell crop ; one bale on the Connell crop and two on the Caruth crop ; one bale was raised by Graves. The bales would weigh about 500 pounds each, worth ten cents a pound; and the corn was thirty bushels, worth fifty cents a bushel. Plaintiff claims three fourths of the Caruth cotton, one fourth of the Graves cotton, and all the corn ; was not claiming the fourth he owed Bryant for rent. Caruth owes plaintiff for his part of the crop and supplies, more than his cotton and corn will come to, but Graves owes him nothing but plaintiff's fourth of Graves' cotton. Plaintiff gave directions as to the working of the crop, and managed and controlled it. Caruth got most of his supplies for making the crop from Bryant. The corn raised by Caruth was divided between him and plaintiff, and the thirty-one bushels, which was a portion of

Caruth's part, was taken possession of by Bryant, Caruth having told him it was there.   He also told Bryant he was willing to sell the cotton and credit it on his debt to Bryant, if plaintiff was willing.   The cotton was hauled to Bryant's gin on plaintiff's wagon, plaintiff's son helping to haul it, and the latter told "them" at the gin to keep the Caruth and Connell crops separate.

The testimony for the defendant tended to show: The plaintiff first rented the land to one Yarbrough who had begun to pitch a crop on it, and Caruth and Graves had begun with Yarbrough and plaintiff to make a crop.   Defendant told plaintiff that defendant had agreed to furnish them supplies and would continue to do so, to which plaintiff agreed.   Defendant did furnish them supplies to make their crops, and took a mortgage on the crop to secure him.   They owe him more than the cotton in dispute will pay.   Caruth delivered the corn to him, and he took it at fifty cents a bushel and gave Caruth credit for it on his debt.   Caruth told him to sell the cotton and apply the proceeds to the debt he owed defendant, which defendant did.   Defendant knew that plaintiff was furnishing some supplies, and that he furnished guano.   Graves sold defendant his cotton, and he applied the proceeds to Graves' debt to him.   The bales would weigh fully 500 pounds.   When the cotton was brought to the gin, nothing was said about keeping the Connell and Caruth crops separate.   Supplies were furnished by defendant to Caruth and Graves to an amount greater than the property in dispute.   Plaintiff did not agree to furnish Graves any supplies, though he did furnish him a little for which Graves paid him. Graves told defendant that defendant could place Graves' part of the cotton on his debt to defendant. Half the cotton delivered to defendant belonged to plaintiff.   The mortgages made by Caruth and Graves to defendant were introduced in evidence; they covered the

crop made by Caruth and Graves during the year in question, and were for a larger sum than the value of the property in dispute.  Defendant also introduced a written contract between plaintiff and Caruth as to the Connell crop, which stated that Caruth was to pay $60· for the crop, work·it and gather it at the proper time and give plaintiff half, and that Caruth's part should remain bound for the $60.  Also, landlord's lien sworn out by plaintiff against Caruth for $60, for supplies for the year in question.  The affidavit recited that plaintiff rented land to Caruth for the year; that during the contract of renting he, as landlord, furnished supplies, and that he made the affidavit for the purpose of foreclosing his lien as landlord upon the crop raised by Caruth upon the land rented.  The execution was levied on some of the corn made by Caruth during the year.

The jury found for the plaintiff $120.  The defendant moved for a new trial, which was denied, and he excepted.

DEAN & SMITH, for plaintiff in error.

NUNNALLY & NEEL, contra.

SIMMONS, Justice.

The facts of this case will be found in the official report.  Under these facts we think Caruth and Graves were not tenants of Pugh, but croppers.  The relationship between them and Pugh was not that of landlord and tenant, but was that of master and servant.  Pugh retained control and direction of the farm, and Caruth and Graves worked it under his direction ; and they were to receive a part of the crop as wages for their labor.  The relation not being that of landlord and tenant, but that of cropper, it follows as a matter of course that Caruth and Graves, the croppers, had no title to the crops raised until Pugh was fully paid for his part of the crop and the advances made by him to

them, and that when Bryant bought a portion of the crops from them, he got no title thereto, and Pugh was entitled to recover that portion of the crop made by Caruth and Graves upon the land cultivated by them as croppers. It seems from the record that Pugh made two contracts with Caruth ; the first for a crop for himself ; and the other to work a crop for a man named Connell. The above ruling applies to the crop that Caruth was to work for himself; but not to crop begun by Connell and which Caruth worked; for under the evidence we think that, as to the Connell crop, Caruth was a tenant and not a cropper. The evidence shows that Connell had begun this crop and had quit or been discharged, and that Pugh made a written contract with Caruth in which it was agreed that Caruth was to pay $60 for the crop, work it and give Pugh half, and that Caruth's part should remain bound for the $60. This was not a contract by which Pugh was to give Caruth a part of the crop as wages for cultivating the land— as he did in the first contract made with him, but was a renting by Pugh to Caruth of that part of the land which had been in the possession of Connell. Caruth being a renter or tenant as to that part of the crop made on the Connell place, the title to that part was in him, and he had the right, therefore, to sell it to Bryant. The evidence shows that one bale of cotton was made by Caruth on the Connell place; and we have seen that the title to this bale was in Caruth and not in Pugh; and Pugh having no title to it could not recover it nor the price of it in an action of trover. Pugh claimed three fourths of the price of this bale, and the jury having found that much for him, the verdict was contrary to evidence to that extent.

The evidence also shows that Caruth made a certain quantity of corn on the land he worked as a cropper, and that the corn was divided between him and Pugh,

and his part levied on by Pugh by virtue of a land-lord's lien; and the court was requested to charge: "If a part of the property sued for had been divided out to Caruth and delivered to him by Pugh, as to such part Caruth had title, even though the relation of cropper may have been shown." The refusal to give this charge, under the evidence in the case, did not injure Bryant, because by calculation it will be seen that the jury did not find the price of the corn for Pugh against Bryant. There were four bales of cotton made on the place, three by Caruth and one by Graves. Pugh claimed three fourths of Caruth's crop and one fourth of Graves' bale. Giving him the amount of cotton he claimed in his evidence, at the price of cotton stated therein and the weight of the bales, the verdict should have been $125; but it was only for $120, showing that if the value of the corn had been added to the verdict it would have been more. So we conclude that the jury did not find against Bryant for the value of the corn which had been sold him by Caruth, and if they did not, he had no right to complain of any ruling that the court may have made about the corn. The jury, as we have shown, having found for Pugh three fourths of the bale made by Connell, and that he had no title thereto and could not recover it from Bryant in an action of trover, we reverse the judgment of the court upon this ground. But if the defendant in error will, within thirty days after the judgment of this court is made the judgment of the superior court, write off from the amount of the judgment $37.50, the value of three fourths of the bale made on the Connell place, the case will then stand affirmed.

*Judgment reversed on condition.*